UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAROLYN HIBLER,                                    Case No. 12-10613

          Plaintiff,                              Marianne O. Battani
v.                                                 United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                   Michael Hluchaniuk
                                                   United States Magistrate Judge
          Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS MOTIONS FOR SUMMARY JUDGMENT (Dkt. 8, 10)**

## I.  PROCEDURAL HISTORY

### A.  Proceedings in this Court

On February 11, 2012, plaintiff Karolyn Hibler filed the instant suit seeking

judicial review of the Commissioner's unfavorable decision disallowing benefits.

(Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District

Judge Marianne O. Battani referred this matter to the undersigned for the purpose

of reviewing the Commissioner's decision denying plaintiff's claim for

supplemental security income benefits.  (Dkt. 2).  This matter is before the Court

on cross-motions for summary judgment.  (Dkt. 8, 10).

### B.  Administrative Proceedings

Plaintiff filed the instant claim for supplemental security income benefits on

January 24, 2007, alleging that she was disabled beginning January 1, 2003.  (Dkt.

5-5, Pg ID 135-41).  The claim was initially disapproved by the state agency

responsible for making disability determinations on behalf of the Commissioner on

May 23, 2007.  (Dkt. 5-3, Pg ID 91).  Plaintiff requested a hearing and on February

3, 2010, plaintiff appeared without counsel before Administrative Law Judge

("ALJ") John A. Ranson, who considered the case *de novo*.  (Dkt 5-2, Pg ID 66-

81).  In a decision dated February 18, 2010, the ALJ found that plaintiff was not

disabled.  (Dkt. 5-2, Pg ID 45-55).  Plaintiff requested a review of that decision,

and the ALJ's decision became the final decision of the Commissioner when, after

review of additional exhibits,[1] the Appeals Council, on January 23, 2012, denied

plaintiff's request for review.  (Dkt. 5-2, Pg ID 18-21); *Wilson v. Comm'r of Soc.

Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

    For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that the findings of the Commissioner be

---

    [1]In this circuit, where the Appeals Council considers additional evidence but
denies a request to review the ALJ's decision, since it has been held that the record
is closed at the administrative law judge level, those "AC" exhibits submitted to
the Appeals Council are not part of the record for purposes of judicial review. *See
Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*,
96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the
administrative record is limited to the ALJ's decision, which is the
final decision of the Commissioner, the court can consider only that evidence
presented to the ALJ. In other words, Appeals Council evidence may not be
considered for the purpose of substantial evidence review.

**AFFIRMED**.

**II.     FACTUAL BACKGROUND**

**A.     ALJ Findings**

Plaintiff was 45 years old at the time of the administrative hearing.  (Dkt. 5-2, Pg ID 69).  Plaintiff's relevant work history included work as a cook and a production worker (bow tier).  (Dkt. 5-6, Pg ID 192).  In denying plaintiff's claims, defendant Commissioner considered bipolar and personality disorders, carpal tunnel syndrome, arthritis of the hands, and asthma as possible bases of disability.  (Dkt. 5-2, Pg ID 50).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since October 11, 2003, the earliest date she could be found disabled based upon the current application.  (Dkt. 5-2, Pg ID 50).[2]  At step two, the ALJ found that plaintiff's bipolar and personality disorders, carpal tunnel syndrome, arthritis of the hands and asthma were "severe" within the meaning of the second sequential step. *Id.*  At step three, the ALJ found that plaintiff does not have an impairment or

_____

[2]The record indicates plaintiff filed a prior application for supplemental security income benefits on April 30, 2003, which was denied at the initial level by determination dated October 10, 2003, because plaintiff's assets exceeded the resource limit for SSI eligibility purposes.  (Dkt. 5-3, Pg ID 87-89).  Plaintiff did not appeal this decision further and it became the final decision of the Commissioner on the issue of plaintiff's disability through October 10, 2003.

3

combination of impairments that meets or medically equals one of the listed impairments.  (Dkt. 5-2, Pg ID 50-51).  The ALJ found that plaintiff has the residual functional capacity ("RFC") to perform "light work . . . with restrictions of no repetitive pushing, pulling, gripping, or grasping, no air or vibrating tools, no repetitive or prolonged fine dexterity, a controlled environment relatively free from dust, smoke and fumes, limited contact with the public, simple and repetitive tasks, not capable of work requiring constant close attention to detail or at more than a regular pace, and requiring occasional supervision."  (Dkt. 5-2, Pg ID 51-54).  At step four, the ALJ found plaintiff unable to perform her past relevant work.  (Dkt. 5-2, Pg ID 54).  At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy. (Dkt. 52-, Pg ID 54-55).

## B.    Plaintiff's Claims of Error

Plaintiff argues that the ALJ's hypothetical question to the vocational expert ("VE") failed to accurately portray plaintiff's impairments and thus the ALJ's findings in reliance on the VE's testimony is not supported by substantial evidence. Plaintiff first contends that the ALJ improperly discounted plaintiff's testimony as not fully credible.  Plaintiff testified that she takes insulin for diabetes but has had to go the emergency room because her diabetes is not controlled. She further testified that she cannot stand for more than 10 minutes, needs help to fix her hair,

has carpal tunnel and arthritis in both hands with pain and swelling, and that medication does not provide much relief.  (Dkt. 5-2, Pg ID 73-74).

Plaintiff also contends that the ALJ failed to fully review the medical records.[3]  Plaintiff was evaluated at the West Community Mental Health Center in San Francisco, California in November 2005.  (Dkt. 5-7, Pg ID 204–11).  Plaintiff reported that she had not been on any medications for four years for her depression/bipolar disorder and instead had been "self medicating"with alcohol and drugs.  *Id.*  Plaintiff also reported she suffers from scleroderma, asthma, arthritis and carpal tunnel, but did not take medication for any of these conditions.  *Id.*  Plaintiff reported that she had been clean and sober for three months, and on examination was friendly and cooperative, well groomed, with a labile mood, congruent affect, and fair insight and judgment.  *Id.*  Plaintiff was diagnosed with

---

[3]The record also contains reports from consultative mental and physical examinations performed at the request of the state disability determination agency in July and September 2003, for plaintiff's prior disability application.  (Dkt. 5-7, Pg ID 195-202).  The mental examiner noted that "[a]t this point in time [plaintiff's] chief complaint is for physical problems," and diagnosed plaintiff with major depression, recurrent, and cocaine dependence in remission three years, assigned plaintiff a Global Assessment of Functioning ("GAF") score of 50, with a guarded prognosis.  *Id.*  The physical examiner noted that plaintiff's lungs were clear with no wheezes or rales, she had mild puffiness of the fingers and tenderness of the finger joints, slightly reduced range of motion of the finger joints, her handgrips were 3+ bilaterally on a scale of 0 to 4, her dexterity was intact, and her range of motion in her back and lower extremities was normal.  *Id.*  The doctor concluded that plaintiff had inflammatory arthritis of the hands, bilateral carpel tunnel syndrome, a history of scleroderma, GERD, hypertension, chronic low back pain and a history of depression with panic attacks.  *Id.*

psychosis NOS and mood disorder NOS and assigned a Global Assessment of

Functioning ("GAF") score of 35.  *Id.*

Dr. Siva Sankaran, M.D., evaluated plaintiff on behalf of the Commissioner

on May 16, 2007.  (Dkt. 5-7, Pg ID 219-22).  Plaintiff reported she was taking

Abilify, Norvasc, Celebrex, Prilosec and Seroquel, and denied any chest pain or

shortness of breath.  *Id.*  Dr. Sankaran observed on examination that plaintiff's

breathing was vesicular, with no rales or rhonchi, she had a normal motor system

with no sensory or motor deficits present, plaintiff was able to squat and touch her

toes, straight-leg raising was negative bilaterally, hand grip was 50 pounds on the

right side and 45 pounds on the left, Tinel's signs were positive, Phalen's signs

were negative, and plaintiff was able to open a jar, button clothing, write legibly,

pick up a coin, and tie shoelaces with either hand.  *Id.*  Dr. Sankaran concluded that

plaintiff had "hypertension which is somewhat uncontrolled today," clinical

evidence of carpal tunnel syndrome bilaterally with fairly good grip, inflammatory

arthritis of the hands with some synovial thickening and swelling, depression with

multiple personalities, and auditory and visual hallucinations with a history

suggestive of schizoid personality.  *Id.*

In addition, Dr. Edward G. Tava, Ed.D., a Licensed Psychologist, performed

a mental status examination of plaintiff on behalf of the Commissioner on April 19,

2007.  (Dkt. 5-7, Pg ID 212-16).  Plaintiff indicated to Dr. Tava that she does not

6

get along well with other people and tends to frequently isolate herself and that she spends most of her time cleaning the house or watching television.  *Id.*  Dr. Tava observed that plaintiff exhibited appropriate contact with reality but her self-esteem seemed very marginal, her insight appeared rather poor, her motivation for change seemed rather marginal, but that she did not appear to either exaggerate nor minimize her symptoms.  *Id.*  Dr. Tava also noted that plaintiff indicated she is depressed but did not exhibit symptoms of depression.  *Id.*  Dr. Tava diagnosed plaintiff with Bipolar I disorder, most recent episode manic, moderate, alcohol dependence (reportedly in remission), and personality disorder NOS (with borderline characteristics), and assigned a GAF score of 48 with a guarded prognosis.  *Id.*

Plaintiff also complains that the ALJ failed to obtain all of her treatment records from the Janes Street Clinic prior to the February 2010 hearing.  She contends that she sent medical records to the Appeals Council and that those records show that plaintiff suffers with "peripheral neuropathy feet, diabetic peripheral neuropathy; COPD; [and] depression, acute," but that the Appeals Council improperly found that the new records would not affect the decision from the ALJ.  (Dkt. 8).

Finally, plaintiff argues that the jobs identified by the VE in response to the ALJ's hypothetical question are outside her capabilities.  According to plaintiff, the

7

jobs identified–dishwasher, janitor, inspector, general office clerk, mail clerk and stock clerk–would all require continued use of the hands, in direct contradiction to the ALJ's restriction of no gripping or grasping.

### C.    The Commissioner's Motion for Summary Judgment

The Commissioner argues that substantial evidence supports the ALJ's finding that plaintiff was not disabled. According to the Commissioner, when there is limited objective evidence, as in this case, plaintiff's credibility becomes particularly important and the ALJ's credibility determination is granted great deference. The ALJ properly found that plaintiff's testimony regarding her alleged pain was not credible. Plaintiff testified that she had asthma, but the record demonstrates that plaintiff had good air entry in her lungs, no rales or rhonchi and her lungs sounded normal (Dkt. 5-7, Pg ID 219, 221), plaintiff had not undergone any testing for asthma (Dkt. 5-2, Pg ID 53), and plaintiff was never hospitalized for asthma symptoms. Nevertheless, plaintiff testified that dust and smoking exacerbated her asthma and the ALJ accommodated plaintiff's claimed impairment by limiting plaintiff to a work environment free from dust, smoke and fumes. (Dkt. 5-2, Pg ID 51).

The ALJ further noted that plaintiff's reports of disabling pain from arthritis and carpal tunnel syndrome were not consistent with the record. The consultative examination in May 2007 revealed that plaintiff's handgrip was fifty pounds on the

8

right side and forty-five pounds on the left side. (Dkt. 5-7, Pg ID 221). Plaintiff was also able to open a jar, button clothing, write legibly, pick up a coin and tie a shoelace with either hand. *Id.* The record is devoid of any objective tests with regard to plaintiff's hands and plaintiff has not sought treatment at a chronic pain clinic. Rather, her treatment has been conservative, and the ALJ accommodated her complaints by limiting her RFC to "no repetitive pushing, pulling, gripping or grasping," "no repetitive or prolonged fine dexterity" and "no air or vibrating tools." (Dkt. 5-2, Pg ID 51).

The ALJ also noted other reasons for finding plaintiff not entirely credible, including her inconsistent testimony. Plaintiff reported several different dates of her last employment and inconsistent reasons why she was fired from that position, such as hallucinations, pain or forgetfulness. (Dkt. 5-2, Pg ID 71; Dkt. 5-6, Pg ID 151; Dkt. 5-7, Pg ID 212, 220). In addition, plaintiff reported that she had been going to Janes Street Academic Health Center for treatment prior to her application, but when Disability Determination Services requested medical records from January 2006 through January 2007 (the date of the request), the health center replied that they did not have any records for that time period. (Dkt. 5-2, Pg ID 70; Dkt. 5-4, Pg ID 93; Dkt. 5-6, Pg ID 152-53; Dkt. 10-1).

According to the Commissioner, plaintiff's claim that the ALJ found her mental condition "was not severe" is inaccurate, as the ALJ found plaintiff had

9

both bipolar and multiple personality disorders that were "severe" under step two of the sequential analysis, but reasonably found that those impairments did not preclude plaintiff from employment.  Neither the consultative examiner nor the state agency reviewing psychologist found plaintiff to be markedly limited in any respect (Dkt. 5-7, Pg ID 247, 251-52), and she was noted to be in contact with reality and her insight and judgment were fair.  (Dkt. 5-7, Pg ID 199).  Plaintiff's allegation that she was possessed by "two different personalities" was not borne out by the record, as Dr. Tava found that she simply engaged in "self talk."  (Dkt. 5-6, Pg ID 158; Dkt. 5-7, Pg ID 214).  In addition, the ALJ noted that the records showed that plaintiff has not sought mental help since 2005, which indicated that her medications were effective and undermined her claims that her mental impairments were disabling.  (Dkt. 5-2, Pg ID 52).  In any event, the ALJ reasonably accommodated plaintiff's mental health impairments in his RFC determination by limiting plaintiff to only simple and repetitive tasks that do not require constant close attention to detail at more than a regular pace.  (Dkt. 5-2, Pg ID 51).  The ALJ also limited plaintiff to working in jobs with "limited contact with the public" and only "requiring occasional supervision" to accommodate her complaints that she did not work well with other people.  (Dkt. 5-2, Pg ID 51-52).  The ALJ's RFC determination is thus supported by substantial evidence.

The Commissioner also argues that the Appeals Council correctly

10

disregarded the new evidence plaintiff submitted with her appeal.  To be material, new evidence must "relate[] to the period on or before the date of the administrative law judge hearing decision."  20 C.F.R. § 416.1470(b); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 149 (6th Cir. 1996).  The evidence plaintiff provided to the Appeals Council included a "sleep apnea study dated January 2011," treatment notes regarding a diabetes-related hospitalization in November 2011, and a list of medications from Janes Street Academic Community Health Center from December 2011.  (Dkt. 5-2, PG ID 19).  The Appeals Council properly declined to add these records to plaintiff's current application because all of these records post-date the ALJ's February 18, 2010 decision and therefore none of this evidence was relevant to plaintiff's health prior to the date of the ALJ's decision. To show that additional evidence is "material," the party must show that there was a "reasonable probability" that the Commissioner would have reached a different conclusion on the issue of disability has he been presented with the additional evidence.  *Sizemore v Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988).  According to the Commissioner, this "new evidence" is immaterial because it does not relate to plaintiff's severe impairments in this application and does not "demonstrate any kind of disability."

The Commissioner contends that plaintiff's argument that the ALJ did not develop a complete record because he failed to procure medical records from Janes

Street Academic Health Center is similarly meritless.  The Michigan Disability

Determination Service did request those medical records for January 2006 to

January 2007 and Janes Street Academic Health Center replied that the records

requested did not exist.  (Dkt. 10-1).  Tellingly, plaintiff had the opportunity to

provide additional records to the Appeals Council, but only provided records for

2011.  (Dkt. 5-2, Pg ID 19).

Finally, the Commissioner argues that the ALJ's hypothetical question to the

VE was proper.  To accommodate plaintiff's carpal tunnel and arthritis of the

hands, the ALJ provided restrictions on "repetitive pushing, pulling, gripping, or

grasping," "repetitive or prolonged fine dexterity," and "air or vibrating tools."

(Dkt. 5-2, Pg ID 78-79).  The ALJ provided for a work environment with "limited

contact with the public" and "simple, repetitive, regular paced work with

occasional supervision and no constant close attention to detail" to accommodate

plaintiff's bipolar and personality disorders.  *Id.*  And, to accommodate plaintiff's

asthma, the ALJ provided for a 'controlled environment" that was "relatively free

from dust, smoke, and fumes."  *Id.*

Further, plaintiff's argument that the jobs identified by the VE are outside of

plaintiff's capabilities, given her carpal tunnel and arthritis, is without merit

because jobs which require some degree of manipulative hand activity but alternate

with other activities are consistent with the ALJ's dexterity restrictions.  And, the

12

Dictionary of Occupational Titles ("DOT") categories are broad and include jobs that vary in their duties. The ALJ may properly rely on the VE's testimony regarding the categories so long as the ALJ confirms that the testimony does not conflict with the DOT, which she did in this case. (Dkt. 5-2, Pg ID 79). *See* SSR 00-4p; *Beinlich v. Comm'r of Soc. Sec.*, 345 Fed. Appx. 163, 168 (6th Cir. 2009). The ALJ therefore properly relied on the VE's testimony.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions

absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion

14

about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul.

96-7p, 1996 WL 374186, *4.

    If supported by substantial evidence, the Commissioner's findings of fact are

conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion."  *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800

F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

    The scope of this Court's review is limited to an examination of the record

only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001).  When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole,

including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of*

*Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of

appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

## B.   Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have

16

different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her

17

past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter

18

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

### C.    Analysis and Conclusions

#### 1.    The ALJ's assessment of the medical records and plaintiff's testimony

Plaintiff argues that the ALJ failed to properly evaluate the medical record

evidence and plaintiff's testimony and therefore the hypothetical question posed to

the vocational expert failed to accurately portray plaintiff's impairments and

functional limitations. The assessment of the medical evidence conducted at a

hearing is particularly important at step five of the evaluation of a disability claim

because the RFC articulated by the ALJ will be used by the vocational expert to

assess the claimant's ability to perform work. In order for a VE's testimony to

constitute substantial evidence that a significant number of jobs exists, "the

question[s] must accurately portray a claimant's physical and mental impairments."

*Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). A hypothetical

question is not required to list all of plaintiff's medical conditions, but is only

required to reflect her limitations. *See Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629,

633 (6th Cir. 2004).

The ALJ here determined that plaintiff had severe impairments of bipolar

and personality disorders, carpal tunnel syndrome, arthritis of the hands, and

asthma, and that plaintiff had the residual functional capacity:

> to perform light work . . . with restrictions of no
> repetitive pushing, pulling, gripping or grasping, no air or
> vibrating tools, no repetitive or prolonged fine dexterity,
> a controlled environment relatively free from dust, smoke
> and fumes, limited contact with the public, simple and
> repetitive tasks, not capable of work requiring constant
> close attention to detail or at more than a regular pace,
> and requiring occasional supervision.

(Dkt. 5-2, Pg ID 50).  The question posed to the VE mirrored the ALJ's RFC.

(Dkt. 5-2, Pg ID 78-79).

Here, the ALJ considered the entire case record, discussed plaintiff's

assessment of her own deficits, and reviewed and discussed the medical opinions

of the examining and consulting physicians and examiners in finding that plaintiff

was not disabled at step five of the sequential evaluation because she could

perform a significant number of jobs in the national economy.

### a.    Plaintiff's mental impairments

With regard to plaintiff's mental impairments, the ALJ recognized that the

record establishes that plaintiff was treated at San Francisco Community Mental

Health Services for a brief period in November 2005 and diagnosed with psychosis

NOS, mood disorder NOS and depression, but that treatment did not continue past

November 2005, (Dkt. 5-2, Pg ID 52; Dkt. 5-7, Pg ID 204-11), and the record does

not indicate any other ongoing treatment with a mental health professional since

2005.  (Dkt. 5-2, Pg ID 52).

Plaintiff's argument that the ALJ failed to adequately develop the record because he failed to produce medical records from Janes Street Academic Health Center is without merit.  The Michigan Disability Determination Service did request medical records from Janes Street Academic Health Center for January 2006 to January 2007 (the date of the request), using the standardized medical records request form, and Janes Street Academic Health Center responded that the requested records did not exist prior to 2007.  (Dkt. 10-1).  Moreover, plaintiff has failed to provide any evidence of the existence of any records the ALJ should have considered.  Plaintiff provided records from Janes Street Academic Community Health Center to the Appeals Council, but only provided records from 2011.  If there were earlier records in existence relevant to the applicable time period, plaintiff should have produced them with the 2011 records.  Plaintiff therefore failed to show that the ALJ failed to adequately develop the record.[4]

---

[4]The Appeals Council properly disregarded plaintiff's newly submitted medical evidence as not material and not pertaining to the relevant time period.  In order for new evidence submitted to the Appeals Council to be considered, it must be material and "relate[] to the period on or before the date of the administrative law judge hearing decision."  20 C.F.R. § 416.1470(b); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 149 (6th Cir. 1996).  As the Commissioner properly explains, the evidence provided to the Appeals Council consists of treatment notes, a sleep apnea study and a list of medications, all from 2011, and the Appeals Council properly declined to add these records to plaintiff's current application because none of the evidence was relevant to plaintiff's health prior to February 18, 2010, the date of the ALJ's decision.  Further, the limited records fail to demonstrate a disability.

The ALJ also discussed the consultative psychological examination by Dr. Tava on April 19, 2007, and Dr. Tava's diagnosis of bipolar disorder, most recent episode manic, moderate, alcohol dependence (reportedly in remission), and personality disorder NOS (with borderline characteristics), with an assigned GAF score of 48 and a guarded prognosis.  (Dkt. 5-7, Pg ID 212-16).  The ALJ found that the GAF score would not preclude a restricted range of unskilled work.[5]

Plaintiff was noted to be in appropriate contact with reality and her insight and judgment were fair, and although plaintiff indicated that she was depressed, Dr. Tava observed that she does not exhibit symptoms of depression in regards to her

_____

[5]It is well-recognized in the Sixth Circuit that GAF scores are a subjective rather than objective assessment and, as such, are not entitled to any particular weight.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 511 (6th Cir. 2006).  "GAF examinations measure psychological, social and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009).  "GAF is a clinician's subjective rating of an individual's overall psychological functioning.  A GAF score may help an ALJ assess mental RFC, but it is not raw medical data.  Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning."  *Kenney v. Astrue*, 247 Fed. Appx. 761, 766 (6th Cir. 2007).  Furthermore, the Commissioner "has declined to endorse the [GAF] score for use in the Social Security and SSI disability programs, and has indicated that [GAF] scores have no direct correlation to the severity requirements of the mental disorders listings."  *DeBoard v. Comm'r of Soc. Sec.*, 211 Fed. Appx. 411, 415 (6th Cir. 2006) (internal quotations omitted); *see also Kornecky*, 167 Fed. Appx. at 511 ("[A]ccording to the [Diagnostic and Statistical Manual's] explanation of the GAF scale, a score may have little or no bearing on the subject's social and occupational functioning . . . [W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place.") (citation omitted).

external demeanor.  *Id.*  Notably, neither Dr. Tava nor the state agency reviewing psychologist found plaintiff to be markedly limited in any area.  (Dkt. 5-7, Pg ID 212-16, 247, 251-52).  Dr. Wayne Hill, Ph.D., the reviewing psychologist, found that plaintiff's "psychological limitations do not appear to interfere with the potential for task activities that are simple in nature" and that she "retains the mental residual capacity to perform step one and step two tasks on a sustained basis."  (Dkt. 5-7, Pg ID 253).  Accordingly, consistent with the record evidence, the ALJ limited plaintiff's RFC to only simple and repetitive tasks that did not require constant close attention to detail at more than a regular pace.  (Dkt. 5-2, Pg ID 51).  Further, to accommodate plaintiff's report that she did not work well with other people, the ALJ limited her to working in jobs with limited contact with the public and only requiring occasional supervision.  *Id.*

### b.    Plaintiff's physical impairments

With respect to plaintiff's physical impairments, the ALJ noted that plaintiff testified that she had asthma, but there is no documentation for this impairment in the record.  To the contrary, Dr. Sankaran, the consultative examining physician reported that plaintiff had good air entry bilaterally with no rales or rhonchi and vesicular breathing.  (Dkt. 5-7, Pg ID 221).  The ALJ further noted that plaintiff had not undergone pulmonary function testing for asthma.  Plaintiff testified that dust and smoking exacerbated her asthma, and the ALJ accommodated this

claimed impairment by limiting her to a work environment free from dust, smoke and fumes.  (Dkt. 5-2, Pg ID 51).

Plaintiff also testified to disabling levels of pain from carpal tunnel syndrome and arthritis in her hands.  The ALJ found that these complaints are not consistent with the record, noting that the consultative examining physician reported that plaintiff's hand grip was 50 pounds on the right side and 45 pounds on the left, with positive Tinel's signs and negative Phalen's signs, and that plaintiff was able to open a jar, button clothing, write legibly, pick up a coin, and tie shoelaces with either hand.  (Dkt. 5-7, Pg ID 221).  The ALJ therefore found that there is no evidence in the record to conclude that plaintiff's severe physical impairments would result in totally disabling pain.  Indeed, plaintiff only testified to sometime experiencing pain in her hands when she "tr[ies] to grab something for a period of time."  (Dkt. 5-2, Pg ID 73).  Nevertheless, the ALJ accommodated plaintiff's impairments of carpel tunnel and arthritis by providing for restrictions on "repetitive pushing, pulling, gripping, or grasping," "repetitive or prolonged fine dexterity," and "air or vibrating tools."  (Dkt. 5-2, Pg ID 51).

Finally, the ALJ also properly noted that no treating or examining physician or mental health professional has placed functional limitations on plaintiff's activities of daily living or stated that she was precluded from all gainful work activity.  (Dkt. 5-2, Pg ID 53).

24

### c.      Credibility assessment

A claimant's subjective complaints can support a claim for disability, but there must also be objective medical evidence in the record of an underlying medical condition. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). Further, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476. On review, the Court is to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the Court] do[es] not, of observing a witness's demeanor while testifying." *Id.* (citation omitted). Still, an ALJ's decision to discount a claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, *2. In reviewing an ALJ's credibility determination, the Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [plaintiff] are reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d at 476.

An ALJ is not bound to accept as credible plaintiff's testimony regarding symptoms. *Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524, 529

25

(6th Cir. 1992).  Analysis of alleged disabling symptoms turns on credibility.  *See*

*Hickey-Haynes v. Barnhart*, 116 Fed. Appx. 718, 726-27 (6th Cir. 2004).

"Because of their subjective characteristics and the absence of any reliable

techniques for measurement, symptoms (especially pain) are difficult to prove,

disprove or quantify."  SSR 82-58, 1982 WL 31378, *1.  In evaluating credibility,

an ALJ considers certain factors:

> (I) [A claimant's] daily activities;
>
> (ii) The location, duration, frequency, and intensity of [a claimant's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication [plaintiff] take[s] or ha[s] taken to alleviate [his] pain or other symptoms;
>
> (v) Treatment, other than medication, [a claimant] receive[s] or ha[s] received for relief of [plaintiff's] pain or other symptoms;
>
> (vi) Any measures [plaintiff] use[s] or ha[s] used to relieve [his] pain or other symptoms; and
>
> (vii) Other factors concerning [plaintiff's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3).

The ALJ here determined that plaintiff's medically determinable

impairments could reasonably be expected to cause her alleged symptoms, but that

plaintiff's statements concerning the intensity, persistence and limiting effect of these symptoms are not credible to the extent they are inconsistent with the ALJ's RFC.  As discussed above, plaintiff's report of disabling pain from arthritis and carpel tunnel syndrome are not consistent with the record evidence.  The ALJ further noted that it does not appear from the record that plaintiff has undergone diagnostic testing for her physical impairments, has not undergone physical therapy, treatment at a chronic pain clinic or prescription of a TENS unit.  (Dkt. 5-2, Pg ID 53).  *See Strong v. Soc. Sec. Admin.*, 88 Fed. Appx. 841, 846 (6th Cir. 2004) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment.  A failure to do so may cast doubt on a claimant's assertions of disabling pain.") (citations omitted).  Plaintiff testified that she did not have any trouble sitting or walking and reported being able to wash the dishes, drive her car, do her shopping, cook her own meals, and generally take care of her personal grooming, but that she occasionally needed help with her hair.  (Dkt. 5-2, Pg ID 75).  These combined activities undermine plaintiff's claim of disabling pain.  *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) (permitting an ALJ to consider daily activities such as housework and social activities in evaluating complaints of disabling pain).  Further, although plaintiff reported an inability to stand for more than ten minutes (Dkt. 5-2, Pg ID 72), the ALJ noted

27

that the record fails to establish any physical impairments that could result in that diminished capacity to stand.  Dr. Sankaran noted on examination that plaintiff was "ambulatory without any walking aid.  No tendency for lurching, swaying or falling" and "[s]he is able to squat and touch her toes," and failed to note any limitation on plaintiff's ability to stand.  (Dkt. 507, Pg ID 221).

Accordingly, the ALJ properly applied the proper standard in evaluating plaintiff's subjective complaints of pain and other purportedly disabling symptoms. The ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing a claimant's demeanor and credibility.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d. 525, 531 (6th Cir. 1997).  The ALJ conducted a thorough evaluation of plaintiff's complaints in light of the objective medical evidence of record, her reported daily activities, and other pertinent factors.  Substantial evidence supports the ALJ's determination based on the medical and other evidence of record that plaintiff is not disabled.

### 2.    The ALJ properly relied on the VE's testimony

Plaintiff also argues that the VE's testimony is not consistent with the Dictionary of Occupational Titles ("DOT") and thus cannot provide substantial evidence for the ALJ's decision.  However, as the Sixth Circuit has noted, "the ALJ is under no obligation to investigate the accuracy of the [vocational expert's]

testimony beyond the inquiry mandated by SSR 00-4p" (i.e., the ALJ's duty to ask the VE about conflicts between her testimony and the DOT).  *Beinlich v. Comm'r of Soc. Sec.*, 345 Fed. Appx. 163, 168 (6th Cir. 2009).  It is undisputed here that the ALJ asked the VE whether her testimony was consistent with the DOT, and the expert testified that it was.  (Dkt. 5-2, Pg ID 79).  Therefore, "even if a conflict existed, the ALJ inquired properly if the [expert's] testimony was consistent with the DOT and was given a response in the affirmative.  Therefore, the ALJ met [his] obligation under SSR 00-4p and there was no error in relying on the positions the [expert] offered."  *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 858 (6th Cir. 2010).

Further, the Sixth Circuit has held that "the ALJ and consulting vocational experts are not bound by the [DOT] in making disability determinations because the Social Security regulations do not obligate them to rely on the Dictionary's classifications."  *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003) (holding that the ALJ did not err in evaluating the testimony of the VE when the VE testified that skilled occupations were available to an unskilled claimant) (citing *Conn v. Sec'y of Health & Human Servs.*, 51 F.3d 607, 610 (6th Cir. 1995)).  The Sixth Circuit explained that because "not all occupations are included in the DOT and the VE may use terminology that differs from the terms of the DOT . . . the mere fact that the DOT does not list occupations with those precise terms does not establish that they do no exist."  *Beinlich*, 345 Fed. Appx. at 168; *see also* SSR 00-

29

4p ("The DOT contains information about most, but not all, occupations.").
"[N]either the DOT or [the VE's testimony] automatically trumps when there is a conflict." *Wright*, 321 F.3d at 616; SSR 00-4p.  Thus, the fact that the job titles to which the VE testifies do not line up perfectly with the DOT does not render the VE's testimony inconsistent with the DOT as a whole.  *See Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 1009).  Therefore, the ALJ here did not err in relying on the testimony of the VE at step five of the sequential evaluation, and the ALJ's opinion is supported by substantial evidence.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

30

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.


Date: March 7, 2013                          s/Michael Hluchaniuk
                                             Michael Hluchaniuk
                                             United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

      I certify that on March 7, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Richard J. Doud, William L. Woodard, AUSA, and the Commissioner of Social Security</u>.

                                 <u>s/Tammy Hallwood</u>
                                 Case Manager
                                 (810) 341-7850
                                 tammy_hallwood@mied.uscourts.gov